NEW, Respondent, v. ST. LOUIS & SUBURBAN RAILWAY COMPANY, Appellant.

St. Louis Court of Appeals, October 31, 1905.

1. **PRACTICE: Nonsuit on Mistaken Statement.** In an action for damages on account of personal injuries, the plaintiff should not be nonsuited on account of a statement made against her interest, in the excitement of cross-examination, where all the facts showed that she was mistaken in the statement.

2. **PERSONAL INJURIES: Elements of Damage: Contributory Negligence in Treatment.** In an action for damages on account of personal injuries an instruction setting forth the elements of damage to be considered by the jury was not erroneous for failure to include the hypothesis of contributory negligence in treating plaintiff's injuries, when there was no evidence to show that she was negligent in the treatment.

3. ———: **Excessive Verdict.** Where, in an action for personal injuries, the evidence showed that the plaintiff received a wound on the leg below the knee, which caused great suffering, was infected with gangrene, and disabled her from work for four months, during a great part of which time she was in bed and under the treatment of physicians, a verdict for $2,100 was not excessive.

Appeal from St. Louis City Circuit Court.—*Hon. Jesse A. McDonald,* Judge.

AFFIRMED.

*Jefferson Chandler* and *T. M. Pierce* for appellant.

(1)    The court erred after the evidence was con-
cluded in refusing to instruct the jury at the request of
the defendant as follows: "The court instructs the jury
that under the pleadings and evidence in this case the
plaintiff is not entitled to recover and you will find your
verdict for the defendant." Culberson v. Railroad, 50
Mo. App. 556; Hanks v. Railroad, 60 Mo. App. 257;
Clemens v. Railroad, 53 Mo. App. 366; Sedgwick on
Damages (8 Ed.), sec. 124; Yarnell v. Railroad, 113
Mo. App. 576; 1 Shearman & Redfield on Negligence,
No. 510; Bueschins v. Gas Light Co., 73 Mo. 219; 2
Thomp. on Trials, No. 580; Galena v. Railroad, 34 Mo.
55; Callahan v. Warner, 40 Mo. 131; Whalen v. Rail-
road, 60 Mo. 323; Brooks v. Railroad, 33 Mo. App. 571;
Smith v. Railroad, 37 Mo. 292. (2)    The court erred
in charging the jury, over the objection of the defendant,
at the request of the plaintiff as set out in instruction 8.
It was the duty of the court under the pleadings in this
case to have charged the jury fully as to the different
constituents and elements of damages and also such
facts as would have lessened the damages.    Sedgewick
on Damages (8 Ed.), sec. 125; Carpenter v. McDavitt,
53 Mo. App. 393; Sanders v. Holland, 39 Mo. App. 232;
Russell v. Columbia, 74 Mo. App. 80; Guess v. Railroad,
50 Mo. App. 614; Cooley on Torts, page 683. (3)    The
court erred in refusing the defendant's motion for a
new trial, because the amount of the verdict showed
that the jury must have been influenced by passion and
prejudice and also laboring under a wrong conception
of the law and the facts.    Nicholls v. Plate Glass Co.,
106 Mo. 55; Haines v. Town of Trenton, 108 Mo. 123;
Sanger v. Railroad, 37 Mo. 240; Burdict v. Railroad,
123 Mo. 221.

*Stern & Haberman, Maurice L. Altheimer* and *Taylor R. Young* for respondent.

(1) The court could not possibly have sustained a demurrer to the evidence. "A demurrer of this character admits every material fact proven, and which may be inferred from the testimony." Young v. Webb City, 150 Mo. 341. (2) Instruction 8 was proper, and contained all the elements of the case. (3) The verdict was not excessive. Batten v. St. Louis Transit Co., 102 Mo. App. 294.

BLAND, P. J.—Defendant maintains a platform about twenty-five feet in length along the side of its track at the northwest corner of Taylor avenue and the Suburban highway, in the city of St. Louis, for the convenience of passengers in getting on and off its cars. The platform is about on a level with the lower steps ascending to the rear platform of the cars. On April 23, 1902, at about two p. m., plaintiff and her friend, Mrs. Bollyn, intending to visit the Suburban Garden, to which defendant's cars ran, proceeded from their homes to the corner of Taylor avenue and Suburban highway and onto the platform, where they hailed a car traveling west. The car came to a stop when the rear platform was near the west end of the station platform on which plaintiff was standing. Two or three persons got off the car and two or three ladies preceded plaintiff and Mrs. Bollyn in boarding the car. Mrs. Bollyn landed safely on the platform but plaintiff did not succeed in getting on the car before it was started forward. Plaintiff's own testimony and that of her witnesses is that just as she took hold of the handrail with her left hand and placed her left foot on the lower step, the car was started forward with considerable speed and she was unable to get aboard; that two young men on the rear platform grabbed hold of her arm, held on to her and tried to pull her onto the platform. In this position and under these cir-

cumstances plaintiff was carried from one hundred to one hundred and fifty feet before the car was stopped, her right leg bumping over and on the projecting ends of the cross-ties. The car was stopped in response to a signal given by some one on the back platform, according to plaintiff's evidence. The conductor, who was on the inside of the car, testified that he gave the signal to stop. After the car was stopped plaintiff got aboard and stood in the aisle (there being no empty seat) until the Suburban Garden was reached, where she and her friend, Mrs. Bollyn alighted, went into the garden and sat through a vaudeville performance. They then returned on one of defendant's cars to the corner of Taylor avenue and Suburban highway and there disembarked and proceeded about seven blocks to plaintiff's home. Plaintiff's evidence is that she did not think, at the time the accident occurred, that she was much hurt, but that her right leg pained her some and the pain increased while she was in the Suburban Garden and continued to grow worse on her return home, and that when she alighted from the returning car the pain was so severe that it required nearly an hour for her to walk to her home. On arriving at her home she examined her leg and found that the shin was lacerated "and all come up in ridges where it had bumped against the ties;" that the wound was from one and one-half to two inches long and about an inch wide and that she applied home remedies to it; that she suffered from pain and nervousness all the following night and in the morning sent for a physician. The accident happened on Saturday. Plaintiff testifies that on the following Monday morning, about the hour of six o'clock, she had a very bad fainting spell from shock, and suffered with hysteria and had ever since suffered with fainting spells, dizziness and headache and from nervousness. Plaintiff's evidence is that for over two months she had to keep her foot in an elevated position and could not use her leg; that during this time her physician advised her to walk some; that she tried to do

so but walking caused the wound to reopen and she had to give it up; that during all this time she could not sleep and suffered great pain, was extremely nervous and that at the time of the trial her right leg was smaller than the left and she was yet under treatment of her physician; that she had not recovered from her nervousness and had lost about ten pounds in weight; that prior to the injury she was strong and did all her own house work but after the injury it was four months before she could get around, since which time she had helped a little about the housework when necessity compelled it. Plaintiff also testified that she had expended one hundred and twenty-five dollars for medical attendance and about twelve dollars and fifty cents for drugs and medicines.

Dr. Lippman, who treated plaintiff a few days after the injury and continued to treat her until sometime in the following September, testified that the wound was three or four inches long and from one and one-half to two inches wide and that the bone was partly denuded; that he found a gangrenous spot in the center of the wound, that the bone proper was swollen and that the wound was exceedingly painful and kept plaintiff on her back causing a disturbance of her digestion; that she "had very much pain," was very nervous and could not sleep and had fainting spells and hysteria, for all of which he treated her. Witness also said: "When I ceased treating her the wound was healed, it was fairly healed. There was a large scar extending over the area of the wound, bluish skin stretched over the wound and the bone was still swollen, and it was painful. The skin was looking bluish and the bone was swollen yet." That she was still very nervous and suffering from indigestion; that he examined her about ten days before the trial and found, "The bone itself was swollen. The bone is covered by a skin, we call it skin of the bone, and inflammation is of this skin of the bone. That swells up, the whole bone on that spot, and the bone was still swol-

len there and very painful to touch up to about ten days ago." That she complained of nervousness and fainting spells. Asked regarding further treatment, the witness said: "It is a question. Of course now this inflammation of the bone will have to be treated and it might go down and it might not go down. It might have to be scraped, the bone, to get a complete cure there, but even if that should have to be done, still this skin that is so tightly stretched over the bone has a tendency to break. The least little scratch on that bone will cause inflammation there. She will always have to wear some kind of protection to keep from getting a little scratch or reopening of the wound."

Dr. R. W. Baker, plaintiff's family physician (out of the city at the time she was hurt) testified that he first saw plaintiff on September 6, 1902; that he approved the treatment Dr. Lippman was giving her and advised her to go on with it; that he did not see her again until the following November. Witness stated that on his first examination he "found a wound over the right shin, I should judge three inches or more in length and an inch or more in width; alongside and over the shin bone there was a streak of black tissue, necrotic tissue there, and there was quite a deep cut right alongside of the shin bone, so it made quite a perceptible opening, and over the shin bone for at least three inches, I should judge, the tissue there was black, what is known as necrotic tissue-gangrenous, if you understand that better— and the whole wound was swollen, and just an open suppurating surface there, and the whole limb was very much swollen, and very painful. She was reclining on a couch with the limb elevated, and I left her in that condition. That was the last I saw of her until in November." Witness further testified that he examined plaintiff two months afterwards and found her suffering from reflex pain, suffering from her stomach and a general dyspeptic condition, and her general nervous system badly out of fix, and said: "The wound had closed when

that was healed but over the region the skin was very firmly adhered to the bone, all over that whole territory the skin was adhered to the bone, and I explained to her that that would necessarily follow and be painful on motion until these adhesions had broken up so the limb could be moved without the tension, and I found the periosteum covering the bone—the skin of the bone—was very much swollen, and it was over the scar on the shin bone for two inches and the skin that had covered this wound was very thin and was very sensitive."

On the part of the defendant, the evidence is that plaintiff attempted to get on the car after it started and that her injury was inconsequential and had entirely healed, and could not be the cause of any further trouble or pain.

The verdict and judgment were for plaintiff for twenty-one hundred dollars. Defendant appealed.

1. A peremptory instruction to find for defendant was offered on the trial but refused by the court. This ruling of the court is assigned as error. The foregoing resume of plaintiff's evidence is the best refutation of this contention of defendant that could be offered. But plaintiff stated, on her cross-examination, that she "was not thrown off her balance when the car started forward." On this scrap of evidence defendant hangs its argument that plaintiff was guilty of contributory negligence, insisting that if she was not thrown off her balance then her shin could not have been bumped against the crossties, which were from fifteen to twenty inches below the lower car step, and that she was negligent in failing to place her right foot on the step and take hold of the right hand-rail of the car and then stepping aboard the car. Plaintiff testified that though she was an active woman it was impossible for her to get on the car while it was in motion. The evidence shows that two gentlemen on the rear platform saw plaintiff's perilous situation, grabbed hold of her and held on until the car was

114 app—25

stopped.  Neither of these gentlemen were produced as witnesses, presumably, for the reason they were unknown to plaintiff.  The fair inference to be drawn from their action is that, seeing plaintiff's situation, they apprehended she was in danger of falling and grabbed hold of her to prevent her from falling and to pull her on the car, if possible.  The laws of motion demonstrate that the action of the car, in starting forward with considerable speed, tended to throw plaintiff in the opposite direction.  The undisputed evidence is that plaintiff's right leg bumped against the cross-ties.  These facts cannot be reconciled with the theory that plaintiff retained her balance when the car started forward, and clearly shows that in the excitement of the moment plaintiff did not realize her exact situation and was simply mistaken when she said she was not thrown off her balance.

2.  The giving of the following instruction on the measure of damages is assigned as error, on the ground that contributory negligence, generally, is pleaded in the answer and that this plea would include negligence in the treatment of the injury whereby it was aggravated:

"8.  If the jury find for the plaintiff, they will assess her damage at such sum as you may believe will compensate her for her injuries, if any, she may have sustained by reason of the negligence of the defendant, together with such sum, if any, as you believe will compensate her for her suffering, including moneys paid, or which she has obligated herself to pay, for physicians' services and medicines by reason of said injuries and directly resulting therefrom."

The plea of contributory negligence may be broad enough to include negligence in the treatment of the wound, causing aggravation and increase of the injury, but to warrant an instruction of any issue in a case there must be some evidence tending to prove that issue.  There is not a ray of evidence proving or tending to prove that plaintiff was negligent in the treatment of her wound.  In her excitement plaintiff did not realize the

extent of the injury until hours after it had been inflicted, in fact, not until the following morning when she called a physician, and there is no evidence that the home treatment she applied to the wound on the day of her injury was not remedial and proper. We think, under the evidence, the defendant has no just ground to complain of the instruction.

3. Defendant thinks the verdict is excessive and shows the jury were influenced by passion and prejudice and for this reason its motion for new trial should have been granted. On the evidence of the plaintiff and her two physicians, it seems to us, considering the nature, character and extent of the wound, the length of time plaintiff was confined to her bed and disabled, the pain and suffering she underwent and the baneful effects the wound has probably caused to her general health, the fact that the bone of her shin is yet swollen and that she may have to undergo a surgical operation to insure its recovery, that the damages are not excessive. We think the case was fairly tried, that the plaintiff had a meritorious cause of action and that the judgment should be affirmed. It is so ordered. All concur.